COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia


LAMEKA DENISE WADE

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2115-11-2           CHIEF JUDGE WALTER S. FELTON, JR.
                                                    MAY 15, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Buford M. Parsons, Jr., Judge Designate

Michael B. Gunlicks (Gunlicks Law, L.C., on briefs), for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


        Lameka Denise Wade ("appellant") appeals from her convictions, as a principal in the

second degree, on two charges of use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1, abduction, in violation of Code § 18.2-47, and robbery of a business with a

firearm, in violation of Code § 18.2-58, following a bench trial in the Circuit Court of Henrico

County ("trial court").  Appellant asserts the trial court erred in finding the evidence presented at

trial sufficient to prove beyond a reasonable doubt that she was present during the commission of

the offenses, that she incited, encouraged, or assisted the principal in the first degree, Demond

Green, and that she shared Green's criminal intent.[1]

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also asserts the trial court erred in convicting her of conspiracy to commit
abduction and robbery, in violation of Code § 18.2-22.  Appellant failed to provide any
argument, principles of law, or legal authority in her opening brief to support this contention.
See Rule 5A:20(e) ("The opening brief of appellant shall contain . . . [t]he standard of review and
the argument (including principles of law and authorities) relating to each assignment of error.").
Because we find this omission significant, the Court will not address appellant's sufficiency

I.  BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court.  Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*).

So viewed, the evidence presented at trial showed that at approximately 8:30 p.m. on March 12, 2010, appellant drove Green to the Audubon Village apartment complex near the White Oak Village shopping center in Henrico County.  Neither appellant nor Green resided at the apartment complex.  Appellant parked her car, a black sport utility vehicle ("SUV"), at the apartment complex and remained in the SUV.  Green, meanwhile, departed the vehicle.  He then forcibly entered a white, four-door car by breaking the rear passenger window, and started the car by breaking into the steering column with a screwdriver.[2]  Green drove the white car to a clothing retail store at the White Oak Village shopping center, where he parked the car and left the engine running.

Green entered the clothing retail store, fired one bullet from an "older" "small caliber revolver," and ordered everyone in the store to get on the floor.  Green wore dark clothing, a hooded jacket, a covering over the lower part of his face, and red and black gloves.

He pointed his gun toward the manager of the store, forced the manager to open the register and the safe, and took approximately $2,500 in cash.  Green then pointed his gun toward the store customers, demanding they give him the contents of their pockets.  As Green was taking money from the store customers, the manager ran outside and called the police.  After several minutes inside the store, Green left the scene alone in the white car, driving out of the shopping center parking lot to exit onto Audubon Drive.

---

argument as it relates to her conviction for conspiracy to commit abduction and robbery.  See, e.g., Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (a significant omission with respect to Rule 5A:20(e) results in waiver of an argument).

[2] The record did not disclose where the white car was located when Green entered it.

Henrico County Police Officers Lanham and Ott received a report of the robbery as they were driving near the White Oak shopping center on Audubon Drive. They observed the white car turning onto Audubon Drive from the shopping center and pursued it as Green turned into the Audubon Village apartment complex, where appellant was waiting. Both officers activated the emergency lights and sirens on their police cars during the pursuit.

Once inside the apartment complex, Green jumped from the white car while it was still moving, and fled on foot behind an apartment building. The officers, pursuing Green, observed him reach into his waistband and discard a gun, later shown to be the one used in the robbery. Green continued to run around the building toward the parking lot, where the officers lost sight of him near some parked vehicles. However, a witness who was standing on an apartment balcony saw Green get into the backseat of appellant's SUV that had been "just sitting there parked" in the parking lot, and called to the officers to alert them. Appellant began driving toward Audubon Drive as several police cars entered the parking lot of the apartment complex.

Henrico County Police Officer Parsley followed the black SUV onto Audubon Drive, activating his emergency lights. When appellant realized police were pursuing her, she phoned her friend, Shenese Fox, and told Fox to tell police, if they called her, that Fox and appellant had plans to meet that night in the Audubon Village apartment complex. Fox agreed. At trial, Fox testified that she and appellant in fact did not have plans to meet that night, that she did not live at Audubon Village, that she was not familiar with the apartment complex, and that she did not even know where the complex was located.

Appellant pulled over to the side of the road "a couple of minutes" after Officer Parsley activated his emergency equipment. When he approached the SUV, appellant repeatedly asked

him "what was going on," and advised him that she was at the apartment complex to "visit[] someone."[3]

Appellant told officers conflicting accounts of her relationship with Green and what transpired the night of the robbery. She initially admitted that Green was the father of her child, that she was pregnant with the couple's second child, and that Green accompanied her to the Audubon Village apartment complex to meet Fox. Appellant also told officers that Green was with her "the whole night," and denied that he had jumped into her car. Appellant then revised her account, stating that Green exited the SUV to "take a leak or something" while she continued to wait for Fox.[4] She later told officers she did not know Green and that "he just jumped into the back of her car and told her to drive." She contended that she "didn't have anything to do with this" and that she only gave Green a "ride" after he got in her car.

At the close of the Commonwealth's case, appellant moved to strike the Commonwealth's evidence, arguing the evidence was insufficient to prove she had acted as a principal in the second degree to robbery and use of a firearm in the commission of robbery. Appellant argued the evidence was insufficient to show she "knew she was going to be the getaway" driver for Green. The trial court overruled her motion to strike the Commonwealth's evidence. Appellant offered no evidence and renewed her motion to strike, arguing that the evidence was insufficient to prove she was "involved as an accessory before the fact" in the "detailed planning" of the robbery. The trial court denied her motion to strike, found appellant

_____

[3] Because of the SUV's tinted windows, Officer Parsley initially did not see Green, who was crouched down in the backseat. When Green "popped up" in the seat, other officers who had arrived at the scene of the traffic stop removed him from the vehicle. Officers recovered the red and black gloves Green wore during the robbery from the ground near appellant's SUV. Officers found a black mask in the rear seat of the SUV.

[4] When investigators asked appellant for Fox's phone number to verify her story, she gave them a phone number belonging to someone else. Investigators ultimately obtained Fox's actual phone number from appellant's cell phone record.

- 4 -

guilty of conspiracy to commit abduction and robbery, and found appellant guilty, as a principal in the second degree, of abduction, robbery of a business with a firearm, and two charges of use of a firearm in the commission of a felony.

## II. ANALYSIS

In our review of a challenge to a criminal conviction, "'[w]here the issue is whether the evidence is sufficient, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Baylor v. Commonwealth, 55 Va. App. 82, 84, 683 S.E.2d 843, 844 (2009) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995)). The Court must affirm the judgment of the trial court unless that judgment is "plainly wrong or without evidence to support it." Clark v. Commonwealth, 279 Va. 636, 640, 691 S.E.2d 786, 788 (2010).

On appeal, as she did at trial, appellant contends the evidence presented at trial was insufficient to prove she was a principal in the second degree to abduction, robbery, and the use of a firearm in the commission of a felony. She asserts the Commonwealth did not present any evidence that she "had knowledge of Green's intent to rob the [retail store] prior to the act occurring, nor that she had knowledge after the fact that a robbery had occurred." Opening Br. at 6. She contends the Commonwealth failed to establish that she shared Green's criminal intent, arguing that she "should not be held accountable for his actions in these matters." Id. at 10.

Code § 18.2-18 provides that, in the case of every felony, with the exception of certain offenses not applicable here, a principal in the second degree "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree."

> "A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime. In order to make a person a principal in the second degree actual participation in the commission of the crime is not

- 5 -

necessary. The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree."

Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005) (quoting Jones v. Commonwealth, 208 Va. 370, 372-73, 157 S.E.2d 907, 909 (1967)). A principal in the second degree "must share the criminal intent of the actual perpetrator." Hall v. Commonwealth, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983).

Here, the evidence presented at trial showed that appellant transported Green to and from the immediate area where he committed the robbery and abduction, that neither appellant nor Green lived at the Audubon Village apartment complex, and that neither appellant nor Green had any reason to be at the Audubon Village complex. Appellant remained in her SUV at the apartment complex when Green departed her vehicle to commit the robbery, attempted to assist him in eluding police, and tried to provide him with an alibi when questioned about the offenses. When police officers began pursuing the SUV, driven by appellant, after the robbery, she phoned Fox, asking her to provide a false story to police officers to justify her presence at the apartment complex. Finally, appellant gave false and contradictory statements to police officers when questioned about how Green came to be in her car after committing the robbery and for what reason she was at the apartment complex.

A fact finder is entitled to draw reasonable inferences from proven facts, so long as "all circumstances proved [are] consistent with guilt and inconsistent with innocence and exclude all reasonable conclusions inconsistent with guilt." McMorris v. Commonwealth, 276 Va. 500, 506, 666 S.E.2d 348, 351 (2008). Here, the "combination of circumstantial evidence [and] direct evidence" produced at trial, Brickhouse v. Commonwealth, 276 Va. 682, 687, 668 S.E.2d 160, 163 (2008), amply supported the trial court's finding beyond a reasonable doubt that appellant

shared in Green's criminal intent, "offer[ed] aid in the commission of" robbery and abduction by driving him to and from the immediate area and waiting while he committed the crimes, Muhammad, 269 Va. at 482, 619 S.E.2d at 33, and was, therefore, guilty as a principal in the second degree to those offenses.[5]

Appellant further argues the evidence was insufficient to show that she knew Green would use a firearm in the commission of robbery. However, in addition to the factors listed above, "[b]ecause of inherent implausibility, the [trial court] was entitled to disbelieve [appellant's] denial that she knew [Green] had a [firearm] when [he] entered the [business]." Thomas v. Commonwealth, 279 Va. 131, 159, 688 S.E.2d 220, 235-36 (2010). The evidence presented at trial proved beyond a reasonable doubt that appellant, as a principal in the second degree, aided in the commission of and shared Green's intent to rob a clothing retail store during normal business hours, where he was likely to encounter both store employees and customers.

> Because they shared the common intent to rob, they shared the common intent to commit all of the elements of robbery, including the use of such force, violence, or intimidation as would be expedient for the accomplishment of their purpose. An incidental probable consequence of such a shared intent was the use of a weapon, including a firearm if one should be at hand. In such circumstances, the law is well settled in Virginia that each co-actor is responsible for the acts of the others, and may not interpose his personal lack of intent as a defense.

Carter v. Commonwealth, 232 Va. 122, 126, 348 S.E.2d 265, 267-68 (1986).

---

[5] In finding appellant guilty of conspiracy to commit robbery and abduction, the trial court necessarily determined that appellant had entered into an agreement with Green to commit those crimes and that she acted in concert with him. See Wright v. Commonwealth, 224 Va. 502, 505, 287 S.E.2d 711, 713 (1982) (a conspiracy "is . . . 'an agreement between two or more persons by some concerted action to commit an offense'" (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937))). This Court has defined "concert of action" as an "'action that has been planned, arranged, adjusted, agreed on and settled between the parties acting together pursuant to some design or scheme.'" Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994) (quoting Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991)).

Thus, the trial court did not err in finding that the evidence proved beyond a reasonable doubt that appellant acted as a principal in the second degree to use of a firearm in the commission of robbery.  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>