COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Frank
Argued at Salem, Virginia


COREY WENDELL HAMPTON
                                              OPINION BY
v.    Record No. 1283-99-3          JUDGE ROBERT P. FRANK
                                             JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                      Charles M. Stone, Judge

            Christopher G. Armstrong (Armstrong &
            Reynolds, on brief), for appellant.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Corey Wendell Hampton (appellant) was convicted in a bench

trial of grand larceny of an automobile in violation of

Code § 18.2-95.  On appeal, he contends the evidence was

insufficient to support the conviction.  We agree and reverse the

judgment of the trial court.

                          I.  BACKGROUND

     William Bruce, III, testified that he drove Troy Tarpley,

Jose Piggott, and appellant to Rivermont Apartments on July 22,

1998.  Tarpley and appellant exited the vehicle while Piggott

remained in the car with Bruce.  A group of people approached the

car.  Someone approached the passenger side and argued with

Piggott.  Bruce got out and told the group to move away from his

car.  Then, Bruce "was knocked out."  When he regained

consciousness, someone told him that "some guys had took off with [his] car."

Piggott testified that he witnessed a group of people attack Bruce. Suspecting that the crowd might damage the vehicle, Piggott drove it to a safer location. At that time, he saw no one else in the car. When Piggott attempted to drive to another location, Tarpley grabbed Piggott and began to hit him. At that time, Piggott realized that Tarpley and appellant were in the back seat of the car. Tarpley "was choking" Piggott and "somebody was hitting him" in his head. The evidence does not establish whether it was Tarpley or appellant who was hitting Piggott. Then, someone pulled Piggott from the car. Tarpley drove off in the car.

Eric Hardy heard Bruce's car crash into a tree a short distance from the Rivermont Apartments. He testified that he pulled Tarpley and appellant out of the car. Tarpley was in the driver's seat, and appellant was in the front passenger seat. As appellant was pulled from the car, his shoes came off.

Investigator R. A. Turner investigated the reported larceny of Bruce's car. He found appellant's shoes in the front passenger compartment "wedged in the car where the dash[board] and everything had been pushed back."

Appellant moved to strike the evidence on the basis that he was a "mere passenger" and did not participate in the attack on Piggott or in the taking of the car. The trial court overruled the motion, stating,

> In the case we've got here, we've got the
> owner of the vehicle being attacked by a mob
> and knocked unconscious. Then Mr. Piggott

trying to get the vehicle away from the mob, and then the principal thief, Mr. Tarpley, grabbing him from behind and dragging him out of the vehicle at the same time that Mr. Hampton is in the back seat. If he had remained in the back seat and Tarpley drove the car off, I think I'd wonder. I'd have a reasonable doubt as to whether or not he had some participation in the crime, but rather than remaining in the back seat and doing nothing, or getting out of the vehicle and having nothing to do with its asportation, he got out and got in the front seat with the thief and drove away with him. It seems to me, under the circumstances of this case, with the violence and the getting out of the back seat and getting into the front, the inference to me is inescapable that he was countenancing the theft.

The trial court did not find that appellant assaulted or directly participated in the assault on Piggott. Instead, the court based the conviction on the fact that appellant got into the front passenger seat of the stolen vehicle with knowledge of the attack and theft, thereby countenancing and approving Tarpley's theft.

## II. ANALYSIS

Appellant contends that the evidence was insufficient to support the conviction for grand larceny of the automobile.

The Commonwealth argues that because appellant was present at the commission of a crime without disapproving or opposing it, he was a principal in the second degree. In support of its argument, the Commonwealth asserts that no evidence established that appellant attempted to stop Tarpley from attacking Piggott, who was ultimately pulled out of the car. At some point, both Tarpley and appellant moved from the back seat into the front seat, then drove away with Tarpley at the wheel. Appellant did not attempt to leave the scene.

As previously stated, appellant argues that he did not participate in the assault or theft and was a "mere passenger."

"When considering the sufficiency of the evidence on appeal of a criminal conviction, we consider the evidence in the light most favorable to the Commonwealth and grant all reasonable inferences fairly deducible therefrom." Ellis v. Commonwealth, 29 Va. App. 548, 551, 513 S.E.2d 453, 455 (1999) (citing Brooks v. Commonwealth, 15 Va. App. 407, 414, 424 S.E.2d 566, 571 (1992)). "'An appellate court must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom.'" Id. (quoting Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993)).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).

A principal in the second degree is one who is not only present at a crime's commission, but also commits some overt act, such as inciting, encouraging, advising, or assisting in the commission of the crime, or shares the perpetrator's criminal intent. See Murray v. Commonwealth, 210 Va. 282, 283, 170 S.E.2d 3, 4 (1969) (citations omitted).

While mere presence during the commission of a crime is not sufficient to convict a person as a principal in the second degree, the Supreme Court of Virginia held:

> "it is certain that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same."

Foster v. Commonwealth, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942) (citations omitted).

Because presence without disapproving or opposing the commission of a crime, in connection with other circumstances, is evidence that a defendant lent his countenance and approval to the crime, we must determine whether "other circumstances" were present in this case in addition to appellant's failure to disapprove or oppose the actions of the perpetrator.

In Foster, the defendant lived with his wife in a house of prostitution, knowing it to be such. See id. at 98, 18 S.E.2d at 315. The Court concluded that the defendant benefited from the earnings of the prostitutes and contributed to the maintenance of the establishment. See id. at 100, 18 S.E.2d at 316.

In Pugliese v. Commonwealth, 16 Va. App. 82, 428 S.E.2d 16 (1993), Davis shot and killed Beckmann in a van while the defendant was present. Prior to the shooting, the defendant knew Davis planned to cheat Beckmann out of some money, but contended he had no prior knowledge of Davis' intent to shoot Beckmann. See id. at 86, 428 S.E.2d at 20. In the van, Davis told the defendant he was going to shoot Beckmann. See id. The defendant remained in the van while Davis disposed of Beckmann's body. See id. Later, the defendant received part of Beckmann's money and assisted Davis in disposing of the van. See id. at 86-87, 428

S.E.2d at 20-21.  The Court found that the defendant countenanced and lent his support to the commission of the murder and robbery by accompanying the perpetrator of the crime knowing of his announced intention to commit the crimes.

Moehring v. Commonwealth, 223 Va. 564, 290 S.E.2d 891 (1982), also is instructive.  Faison and the defendant were hitchhiking.  See id. at 566, 290 S.E.2d at 891.  Keeling, leaving his keys in the ignition, went into a gas station to pay for gas he had just pumped.  See id.  Faison got into Keeling's vehicle and drove off.  See id.  The defendant was still across the road hitchhiking.  See id.  Faison drove north on Route 17 and disappeared from sight.  See id., 290 S.E.2d at 892.  Several minutes later, Faison reappeared, driving south on Route 17.  See id.  He stopped, picked up the defendant, and drove off again.  See id.  Faison testified at trial that the defendant knew nothing of the theft and that the defendant implored him to stop for the police.  See id. at 567, 290 S.E.2d at 892.  The trial court convicted the defendant because he saw the vehicle being taken and then left the scene in the stolen vehicle.  See id.

The Supreme Court reversed the conviction, stating:

> The Commonwealth's evidence and the reasonable inferences deducible from that evidence do not establish that Moehring aided Faison in the theft or that he shared Faison's intent to deprive Keeling of his truck.  All that the prosecution proved was that two men were observed walking south along Route 17 in the early morning hours of March 23, 1980; that each was attempting to "thumb" a ride from passing motorists; that one of the men, Faison, apparently despaired of success, left his fellow hitchhiker and went across the highway and stole a truck; that the other man, Moehring, continued walking and "thumbing"; and that some minutes

later Moehring was given a ride in the stolen truck.

When Faison committed his larceny of the truck, Moehring was across a double-lane highway some distance from the scene. Under such circumstances, it is difficult to regard him as a "lookout," or an accessory before the fact. And the mere acceptance by Moehring of a ride in the stolen vehicle (and like acceptance by another hitchhiker who was acquitted of the larceny of the truck) did not in any way aid Faison. Taken in the light most favorable to the Commonwealth, the evidence fails to meet either the overt act or shared intent requirements of Triplett and Murray, supra.

Because larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny. Dunlavey v. Commonwealth, 184 Va. 521, 35 S.E.2d 763 (1945). However, in the instant case there is no evidence that Moehring assisted in any way in the transportation or disposition of the truck he knew to be stolen. On the contrary, Faison testified it was the defendant who finally convinced him to abandon his flight and surrender to the police. The arresting officer noticed the exchange between Moehring and Faison prior to the time Faison stopped. The officer said "he [Moehring] reached over once and grabbed him or poked him or something to that effect." . . .
Neither do we find evidence that established beyond a reasonable doubt that Moehring countenanced or approved the theft of the truck by Faison, or wished the venture to succeed. The most that can be said with reasonable certainty is that this defendant-hitchhiker accepted a ride from the first person who stopped and that he knew that person was driving a stolen vehicle. This conduct does raise a suspicion of guilt. However, it is not sufficient to establish beyond a reasonable doubt that the defendant committed grand larceny.

Id. at 567-68, 290 S.E.2d at 892-93.

Clearly, in Foster and Pugliese, "other circumstances" were present in addition to the defendant simply being present and not

opposing the criminal act.  In <u>Moehring</u>, there were no "other circumstances."

In this case, no "other circumstances" are present.  The trial court's ruling limits our analysis to whether appellant's conduct in not leaving the vehicle and moving into the front seat "countenanced" Tarpley's criminal act.

No evidence proved appellant participated in the theft or aided and abetted Tarpley by inciting, encouraging, advising or assisting him.  No evidence proved appellant was a "look-out." No evidence proved appellant shared Tarpley's criminal intent. While larceny is a continuing offense, appellant did nothing to aid Tarpley in stealing the car or in driving it away. Appellant's conduct in remaining in the vehicle and moving into the front passenger seat is consistent with the hypothesis that he did so for his own comfort and convenience.

For the reasons stated, we reverse the judgment of the trial court and dismiss the indictment.

<u>Reversed and dismissed.</u>